NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO K.C.

No. 1 CA-JV 24-0077

FILED 03-18-2025

Appeal from the Superior Court in Maricopa County
No. JD39460
The Honorable Melody Harmon, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Anni Hill Foster and Judge Angela K. Paton joined.

**B A I L E Y**, Judge:

¶1 Jonathan C. ("Father") appeals the termination of his parental rights to K.C. ("Child") on the statutory grounds of mental illness and fifteen months' out-of-home placement. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (8)(c). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 We review the facts in the light most favorable to upholding the superior court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶3 Father and Yolanda C. ("Mother")[1] are the biological parents of Child, who was born in April 2021. Mother is also the biological mother of K.H.C., who was born in January 2020.

¶4 Before Child was born, the Department of Child Safety ("DCS") became involved with Mother and Father due to domestic violence between them and Mother's substance abuse, mental health, and physical health issues. In its dependency petition, DCS alleged that police had responded to a series of domestic violence incidents in early 2020 between Mother and Father, in which Mother reported that Father had pushed her and scratched the side of her neck while she was holding K.H.C. and later, strangled her in front of K.H.C. In June 2020, K.H.C. was adjudicated dependent as to Mother and placed in a licensed foster home.

¶5 Based on these circumstances, DCS removed Child the day after she was born and placed her in the same foster home as K.H.C. DCS then filed its dependency petition against Mother and Father, alleging dependency against Father based on his domestic violence with Mother and his inability to provide a safe home environment due to his unmanaged epileptic seizures. DCS alleged that Father experienced seizures ten to fifteen times a month, with each seizure lasting five to ten minutes. Father claimed these seizures were not an issue because he took seizure medication, but he also admitted he sometimes forgot to take this medication. At the dependency adjudication hearing, Father acknowledged he might need a caregiver due to these seizures. The superior court found Child dependent as to Mother and Father.

¶6 DCS provided Father with various rehabilitative and reunification services, including a referral for a psychological evaluation; parenting skills services, including parent aide services and Family

---

[1] The superior court also terminated Mother's rights. Mother is not a party to this appeal.

Connections; domestic violence counseling; supervised visitation; drug testing; substance abuse treatment; referrals for individual counseling; and case management services. Child remained in foster care throughout the dependency.

¶7 During the dependency, Father continued to engage in domestic violence with Mother. In an October 2021 incident, Father punched Mother multiple times in her face and head, and she cut him with a knife. In December 2021, Father was arrested for assaulting a resident of his apartment complex who intervened in Father's verbal altercation with Mother. And between March and May 2022, police responded to at least ten reports of domestic violence at Mother's and Father's residence.

¶8 Following Father's psychological evaluation in October 2022, the psychologist diagnosed Father with unspecified personality disorder with mixed traits (antisocial, borderline, and narcissistic) and severe alcohol disorder. During the evaluation, Father reported having a Seriously Mentally Ill designation, which he had received in 2018. The psychologist gave a "very guarded" prognosis of Father's ability to safely parent in the foreseeable future, due to Father's "complex amalgamation of emotional and character and substance-related conditions . . . made even more worrisome due to [Father's] reliance on dysfunctional coping strategies and lack of consistent treatment involvement." The psychologist made various treatment recommendations, including abstinence from non-prescribed mind- or mood-altering substances, clinical approval and monitoring of any ongoing prescribed cannabis use, regular substance-abuse testing, and intensive outpatient treatment and standard outpatient treatment for substance abuse. Over the course of the dependency, Father failed to adhere to his mental health and seizure medications by skipping dosages and consuming marijuana alongside his prescribed medications. Because marijuana interfered with the efficacy of his medications, his providers repeatedly advised him to become sober.

¶9 Father consistently participated in parent-aide services, Family Connections, and domestic violence counseling, but after he completed the services, his service providers continued to have concerns regarding his ability to care for Child. Among these concerns was Father's unaddressed mental health, which limited his ability to benefit from the parenting services. The providers noted that when Father completed Family Connections, he showed only a three-point improvement (on a scale of 0-100) between his initial and final assessment scores. And after he completed domestic violence counseling, Father was arrested in November 2023 for a domestic violence incident with Mother.

¶10 Father did not participate consistently in drug testing, substance abuse treatment, and individual therapy. Throughout the dependency, Father completed less than half of his scheduled drug tests. Throughout 2022 and 2023, all his tests were positive for marijuana, and one test was also positive for methamphetamine. Father only began testing consistently and returning negative test results in January 2024, the month leading up to his termination trial. To address his substance abuse, Father completed a medical marijuana education class, but he did not complete intensive outpatient treatment or standard outpatient treatment as recommended by the psychologist. Father also failed to participate consistently in individual therapy, causing the service to nearly close on multiple occasions due to his consecutive absences.

¶11 In August 2023, the superior court changed the case plan to severance and adoption, and DCS moved to terminate Father's parental rights. After a three-day contested trial in February 2024, the superior court terminated Father's parental rights based on the statutory grounds of mental illness and fifteen months' out-of-home placement. *See* A.R.S. § 8-533(B)(3), (8)(c). The court also found that termination would be in Child's best interests. *See* A.R.S. § 8-533(B). Father timely appealed.

¶12 In September 2024, DCS moved to stay the appeal, stating it was unable to confirm that it had disclosed all relevant documents before trial. This court granted that stay and continued it upon two subsequent motions by DCS. While the appeal was stayed, DCS completed its disclosure.

¶13 In December 2024, the superior court issued a ruling stating it had conducted a review of the additionally disclosed documents and found they were "not material to the Court's previous decision and would not have impacted the Court's order to terminate parental rights." This court then lifted the stay of this appeal. Father did not file a separate notice of appeal from the superior court's December 2024 ruling.

¶14 To confirm whether Father sought to challenge the superior court's December 2024 ruling as part of his appeal, this court issued an order allowing Father to file an optional supplemental brief. Father submitted a supplemental brief confirming that he was not seeking review of the December 2024 ruling.

¶15 We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

**DISCUSSION**

**¶16** To terminate parental rights, a court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). "The [superior] court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) (citation omitted). We will affirm a termination order unless clearly erroneous. *Id.*

**¶17** To terminate parental rights for mental illness or mental deficiency, the superior court must find that (1) the parent is unable to discharge parental responsibilities because of mental illness or a mental deficiency, and (2) reasonable grounds exist to believe the condition will continue for a prolonged indeterminate period. A.R.S. § 8-533(B)(3). Under the fifteen months' out-of-home-placement ground, the court may terminate a parent's rights when (1) "[t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement," (2) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement," and (3) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c).

**¶18** On appeal, Father argues that clear and convincing evidence did not support the statutory grounds found by the superior court for termination. Father does not challenge the court's best interests finding on appeal, and accordingly, we accept the finding and do not address it further. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 13 (2000).

**¶19** Father argues that the superior court improperly relied on evidence of Child's apparent discomfort during supervised visits. But the superior court did not rely on such evidence in finding either termination ground. Rather, the court merely noted this evidence while describing the services provided by DCS, and it did not mention Child's discomfort in its analysis of the termination grounds.

**¶20** Father also argues that the superior court improperly considered evidence of his substance abuse because the only substance he regularly used was marijuana, he purportedly used it for the legitimate

medical purpose of managing his epilepsy and leg pain, and he apparently decreased his usage by the time of trial. Father argues the superior court should not have relied on his marijuana use in terminating his parental rights unless it "renders him so impaired that he cannot safely parent." *Gerald M. v. Dep't of Child Safety*, 2 CA-JV 15-0130, 2016 WL 2585919, at *7, ¶ 33 (Ariz. App. May 4, 2016) (mem. decision). Even accepting Father's premise that his substance use was limited to medical marijuana, such use was contrary to his health providers' advice. And although Father had begun testing clean by the time of trial, the court found that Father's marijuana use was part of a pattern of noncompliance with his seizure and mental-health medications. With his epilepsy and mental illnesses continuing to go unmanaged, Father was unable to demonstrate the necessary sobriety and stability to parent. Father does not challenge these findings, which the record supports.

¶21 Father next argues that the superior court improperly considered evidence of his domestic violence with Mother, given that Father's last documented domestic violence incident took place in November 2023 and his relationship with Mother purportedly ended after the incident. Father is essentially recounting favorable trial evidence and asking this court to reweigh the evidence, something this court will not do. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Reasonable evidence supports the superior court's finding that Father's domestic violence pattern continued throughout the dependency and therefore supports both grounds for termination.

## CONCLUSION

¶22 The superior court's order terminating Father's rights to Child is affirmed.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR